# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DENISE T.,**

          **Plaintiff,**

    **v.**                    **Case No. 24-CV-99**

**CAROLYN COLVIN,**
**Acting Commissioner of the Social Security Administration,**

          **Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging that she has been disabled since May 1, 2019 (Tr. 38 (amended alleged onset date)), plaintiff Denise T. seeks supplemental security income and disability insurance benefits. Her date last insured was September 30, 2019. (Tr. 473.) After her application was denied initially (Tr. 67-68) and upon reconsideration (Tr. 83-84), a hearing was held before Administrative Law Judge (ALJ) Arman Rouf on March 22, 2021 (Tr. 31-66). On April 16, 2021 the ALJ issued a written decision concluding that Plaintiff was not disabled. (Tr. 13-30.)

After the Appeals Council denied Plaintiff's request for review on December 8, 2021 (Tr. 3-9), she filed an action in federal court seeking reversal and remand (Tr. 540-66). On August 19, 2022, the Court entered an order upon the stipulation of the parties remanding the matter for a new hearing. (Tr. 567-72.) On January 4, 2023, the Appeals Council vacated the prior hearing decision and specified errors to be corrected on appeal. (Tr. 575-82.) A hearing was held before ALJ Rouf on July 7, 2023. (Tr. 483-512.) On September 26, 2023, the ALJ issued a written decision concluding that Plaintiff was disabled, but only as of July 14, 2024. (Tr. 456-82.) The decision became final and appealable to federal court in November 2023, when the Appeals Council declined to assume jurisdiction. 20 C.F.R. §§ 404.955, 404.984, 416.1455, 414.1484.

On January 25, 2024, Plaintiff filed this action. (ECF No. 1.) All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 7), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since May 1, 2019, the alleged onset date[.]" (Tr. 462.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Plaintiff has the following severe impairments: bilateral knee degenerative joint disease, chronic obstructive pulmonary disease (COPD), left shoulder disorder, and obesity. (Tr. 462.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 463.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p. The ALJ concluded that, prior to July 14, 2021, Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could frequently stoop; occasionally climb ramps and stairs, kneel, crouch, and crawl; occasionally balance; occasionally push, pull, or operate foot controls with the bilateral lower extremities; never climb ladders, ropes, or scaffolds; and occasionally reach overhead with the left upper extremity. The claimant needed to avoid exposure to extreme heat or cold; could tolerate occasional exposure to humidity, dust, odor, fumes, and other pulmonary irritants; and needed to avoid unprotected heights and dangerous moving machinery.

(Tr. 464.) The ALJ concluded that, since July 14, 2021, Plaintiff had the same RFC with an additional limitation that "the claimant will be off task at least 20% of the time in an 8-hour workday." (Tr. 470.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that, prior to July 14, 2021, Plaintiff "was capable of performing past relevant work as a

benefits clerk and claims clerk" (Tr. 469), and since July 14, 2021, Plaintiff's RFC "has prevented [her] from being able to perform past relevant work" (Tr. 472).

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "[b]eginning on July 14, 2021, … there are no jobs that exist in significant numbers in the national economy that the claimant can perform[.]" (Tr. 473.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision

even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"
*L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1 Evaluation of Dr. Fowler's Opinion

Plaintiff argues that "[t]he ALJ did not construct an accurate and logical bridge from the evidence to his rejection of [agency consultant,] Dr. Fowler's opinion regarding [Plaintiff's] inability to sustain a full-time workweek." (ECF No. 16 at 12.) She contends that Dr. Fowler's opinion is well-supported by the medical evidence and consistent with the record. (*Id.* at 15.)

When evaluating medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). "Instead, the ALJ must focus on the persuasiveness of the medical opinions by considering supportability, consistency, the relationship with the claimant, specialization, and other factors." *Selke v. O'Malley*, No. 23-cv-754, 2024 WL 4132434, at *4 (E.D. Wis. Sept. 10, 2024) (citing 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the "most important factors" to consider. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he considered the other factors involved in weighing opinions. *Id.* § 404.1520c(a)-(c). The court will defer to an ALJ's decision to give an opinion less weight if the ALJ considers

the factors listed under § 404.1520c and minimally articulates his reasoning. *Deloney v. Saul*, 840 F. App'x 1, 10 (7th Cir. 2020) (citing *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019)).

"Supportability" considers the extent to which the opinion presented objective medical evidence and a supporting explanation. 20 C.F.R. § 404.1520c(c)(1). "The more relevant" that evidence or explanation is, "the more persuasive the medical opinion[] … will be." *Id.* "Consistency" compares the source's findings to evidence from other sources: "The more consistent a medical opinion[] ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] ... will be." *Id.* § 404.1520c(c)(2).

However, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "An ALJ may give less weight to an opinion that is unsupported by objective evidence," *Vang v. Saul*, 805 F. App'x 398, 401 (7th Cir. 2020), or is "inconsistent with the record as a whole." *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021). Ultimately, the ALJ's decision to discount a medical opinion must be supported by substantial evidence. *See Albert v. Kijakazi*, 34 F.4th 611, 615 (7th Cir. 2022).

Agency consultant Dr. Fowler based his opinion on a consultative medical examination, diagnostic imaging, pulmonary function testing, and a review of Plaintiff's treatment notes through October 2019. (Tr. 468.) He opined that, prior to March 31, 2020, Plaintiff had the capacity for work at a light exertional level, "with frequent postural activities and that … allowed her to avoid concentrated exposure to pulmonary irritants." (*Id.*) He further opined that, as of April 1, 2020:

> [Plaintiff] was limited to sedentary work with lifting less than 10 pounds; standing and/or walking 2 hours per day; sitting 4 hours per day; unlimited balancing; frequent stooping; occasional kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds; and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.

(Tr. 468-69.) Based on this assessment, Dr. Fowler found that Plaintiff could not sustain full-time work as of April 1, 2020, resulting in a denial of her disability insurance benefits claim and a partially favorable supplemental security income finding with benefits starting April 1, 2020. (Tr. 93.)

The ALJ found Dr. Fowler's opinion partially persuasive. (Tr. 468-69.) He found Dr. Fowler's opinion as to Plaintiff's ability to stand and walk prior to March 31, 2020, unpersuasive because he found Plaintiff's morbid obesity, knee osteoarthritis, and obesity-related shortness of breath with exertion warranted a sedentary limitation. (Tr. 468.) Plaintiff does not contest this finding.

As to Plaintiff's capacity as of April 1, 2020, the ALJ agreed with Dr. Fowler that Plaintiff was limited to standing and/or walking two hours per eight-hour day (*see* SSR

83-10); could frequently stoop; occasionally climb ramps and stairs, kneel, crouch, and crawl; and must avoid concentrated exposure to pulmonary irritants. (Tr. 464.) However, the ALJ found unpersuasive Dr. Fowler's opinion that Plaintiff could not perform sedentary work—specifically, that she could only sit for four hours per eight-hour workday rather than six and could lift only less than 10 pounds rather than up to 10 pounds. (Tr. 468-69, 464); SSR 83-10. The ALJ also found that Plaintiff's obesity, left shoulder symptoms, and bilateral knee osteoarthritis warranted additional limits for her extremities. (Tr. 469, 464.)

The ALJ further found that, as of July 14, 2021, Plaintiff's need for frequent rest breaks and prescription of a wheelchair to "push and use to rest when needed" meant Plaintiff "[would] be off task at least 20 percent of the time in an 8-hour workday." (Tr. 470-71.). This additional limitation resulted in the ALJ finding that Plaintiff could not sustain full-time work as of that date, denial of her disability insurance benefits claim, and a partially favorable supplemental security income finding with benefits starting July 14, 2021. (Tr. 473.)

The crux of Plaintiff's argument is that Dr. Fowler's opinion must be taken as a whole: Plaintiff is "[d]isabled … due to her inability to sustain a 40 hour work week *at any exertional level*." (Tr. 110 (emphasis added).) Plaintiff contends that the Commissioner's focus on Plaintiff's ability to perform sedentary work ignores Dr.

Fowler's overall opinion that Plaintiff is unable to sustain work "at any exertional level." (ECF No. 27 at 1-2.)

As outlined above, the only relevant difference between Dr. Fowler's opinion and the ALJ's RFC finding is whether Plaintiff is able to sit for six (instead of four) hours and is able to lift up to 10 (instead of less than 10) pounds as required to perform sedentary work. *See* SSR 83-10 (describing sedentary work as "involving lifting no more than 10 pounds," and standing or walking no more than two hours and sitting six hours during an eight-hour workday). The ALJ is not required to blindly accept a conclusory statement and opinion that Plaintiff is unable to perform work "at any exertional level," even if that statement is from an agency consultant. *See Vang*, 805 F. App'x at 401 (affirming "ALJ's decision to afford only partial weight to [doctor's] opinions" where the "opinions were conclusory or unsupported"). Indeed, the ALJ *must* consider, support, and explain whether the plaintiff's claimed limitations are supported by the evidence. SSR 16-3p (stating that an ALJ may not make conclusory statements; his "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated").

It was thus appropriate—and *necessary*—for the ALJ to consider the evidentiary support for each of Dr. Fowler's limitation findings. The ALJ explained that Dr. Fowler's opinion was not supported or consistent with the record:

> [T]he undersigned finds only partially persuasive Dr Fowler's opinion …
> [because] his assessment, particularly as to the claimant's limited ability to

10

sit, is not supported by references to relevant clinical and/or diagnostic findings. Moreover, Dr. Fowler did not have the opportunity to review the entire record, and his assessment is not consistent with the evidence at the hearing level.

(Tr. 468-69.)

The ALJ explained that medical notes of Plaintiff's "clear profound shortness of breath with any exertion" were inconsistent "with her presentation at routine treating examinations, including via telemetry in April 20, 2020, when she denied symptoms of shortness of breath and her primary care provider did not note any observations as to shortness of breath during interaction and noted she was 'doing well' with medications." (Tr. 469.) The ALJ acknowledged Plaintiff's shortness of breath in other visits but also noted she "had otherwise clear lungs with no wheezes, rhonchi, or rales[,] and her oxygen saturation was normal." (*Id.*) And he noted that Plaintiff "did not complain of any musculoskeletal pain or functional limitations on April 20, 2020 consistent with an inability to perform even sedentary work or, as assessed by Dr. Fowler, an inability to sit for more than 4 hours in an 8-hour period." (*Id.*) Similarly, the ALJ noted that in July 2020 there was no "note [of] any discomfort or shifting of position with sitting during the examination. Rather, [Plaintiff] was pleasant and 'comfortable and in no distress at any point;'" and there was generally "no indication as to difficulty or discomfort with sitting." (*Id.*)

Reading the ALJ's opinion as a whole, the ALJ also explained that Plaintiff's overall medical history was inconsistent with an inability to perform sedentary work, as her

medical notes were void of any objective evidence that she could not sit up to six hours or lift 10 pounds. (Tr. 465-69); *see also Gina V. v. Kijakazi*, No. 20-cv-4009, 2022 WL 1457801, at *3 (N.D. Ill. May 9, 2022) ("The Court also reads the ALJ's decision as a whole, and when read in totality, it demonstrates that the ALJ's decision is supported by more than a scintilla of evidence." (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5. (7th Cir. 2004))). Thus, while the ALJ found "the overall evidence supports [Dr. Fowler's] finding that the claimant experiences limitations in function due to her physical impairments, it does not support the degree of exertional limitation [he] assessed … as of April 1, 2020." (Tr. 469.)

The ALJ was correct that Dr. Fowler did not support his finding that Plaintiff could not sit for more than four hours or lift 10 pounds. Dr. Fowler did not cite any specific evidence in support of those findings. (Tr. 93, 95, 96.) He supported his opinion generally by citing Plaintiff's combined impairments of morbid obesity, COPD, bilateral knee degenerative joint disease, and a shoulder rotator cuff tear (Tr. 93), but none of these conditions impact Plaintiff's ability to perform sedentary work specifically. The medical records reflect that Plaintiff's COPD bothers her *with exertion* (Tr. 765, 803, 845, 428); her knee pain and mobility issues bother her *when moving* (Tr. 429, 845); and her morbid obesity affects her by causing or exacerbating these symptoms (causing mobility issues and exacerbating breathing issues) (Tr. 418, 429, 765, 784, 845 (finding Plaintiff's "obstructive lung disease compatible with her chronic smoking history … [and her] mild

restriction compatible with her body habitus)). None of these conditions support a finding of an inability to sit for six hours in an eight-hour workday.

Dr. Fowler's reference to Plaintiff's rotator cuff tear supports some limitation for her left shoulder; but the tear only impacts one shoulder, Plaintiff often did not complain of her shoulder at doctor visits, and she exhibited full strength and range of motion in her upper extremities except for limited range of motion in her left shoulder. (Tr. 465-66.) Thus, Dr. Fowler's reference to Plaintiff's rotator cuff tear does not support "the degree of exertional limitation assessed" (Tr. 469)—a limitation to lifting *less than* 10 pounds, as opposed to lifting *up to* 10 pounds, and a reaching limitation.

Plaintiff contends that Dr. Fowler's review of Dr. Nicholas Glass's medical examination findings supports Dr. Fowler's RFC finding. (ECF No. 16 at 18-19.) The ALJ analyzed Dr. Glass's notes (Tr. 466, 469), and they are similarly void of any reference to Plaintiff experiencing discomfort sitting. (Tr. 466, 427-30.) As such, they do not support Dr. Fowler's RFC finding as to Plaintiff's inability to perform sedentary work.

Plaintiff also contends her morbid obesity supports Dr. Fowler's opinion. (ECF No. 16 at 18-19.) Plaintiff's Body Mass Index (BMI) has ranged from 53-64 kg/m$^2$. (Tr. 463; ECF No. 16 at 3.) Plaintiff's obesity causes her mobility issues and exacerbates her breathing issues upon exertion which, as discussed, do not affect her ability to perform sedentary work. While the ALJ did not explicitly mention Plaintiff's morbid obesity in his supportability analysis, he acknowledged Plaintiff's morbid obesity throughout his

opinion (Tr. 462, 463, 466, 467), analyzed her obesity-related symptoms (mobility issues caused by obesity and COPD and dyspnea exacerbated by obesity), accommodated Plaintiff's obesity in the RFC limitations (Tr. 468), and explained that her symptoms do not suggest an inability to perform sedentary work. (Tr. 465-69.) This was enough.

Regarding consistency, the ALJ was correct that Dr. Fowler's finding that Plaintiff could not perform sedentary work was inconsistent with the evidence on the whole. The overall medical evidence demonstrates that Plaintiff has difficulty moving due to body habitus and shortness of breath upon exertion due to chronic smoking and body habitus but is entirely void of evidence supporting that Plaintiff is unable to perform sedentary work. (Tr. 465-69, 765, 845.) "And [just as] the presence of objective indicators ... makes a claim more plausible, their absence makes it less so." *Vang*, 805 F. App'x at 401 (quoting *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010)). "Without objective medical evidence that explains or supports many of [Dr. Fowler's] [findings], the ALJ did not err in affording partial weight to his opinions." *Vang*, 805 F. App'x at 401 (affirming ALJ's decision to afford doctor's opinion partial weight where the doctor did not support his statements and there was no consistent objective evidence).

Thus, the ALJ satisfied the minimum articulation requirement to explain his decision to afford Dr. Fowler's opinion partial weight and find Plaintiff could perform sedentary work.

Plaintiff points to a number of alleged misrepresentations or omissions by the ALJ. But "[i]t is not enough to nitpick the ALJ's order. To warrant reversal, [Plaintiff] must show that the ALJ's determination was not supported by substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

For example, Plaintiff argues that the ALJ erred in relying on Plaintiff's telemedicine visit (ECF No. 16 at 16-17), during which she denied shortness of breath symptoms, said she was "doing well" with medications, did not complain of pain, and did not schedule another video treatment appointment because she had not had issues with medications. (Tr. 466-67, 469.) But the ALJ did not rely on this visit alone or leave out details that this was a telemedicine visit without a physical examination. (Tr. 469.) The ALJ accurately described the visit and considered it alongside Plaintiff's other medical visits. (Tr. 469 (citing visits in July 2020, June 2021, and July 2021), 465-67 (considering general medical history).) It was not error for the ALJ to consider and include Plaintiff's telemetry primary care visit in his analysis.

Plaintiff also contends that the ALJ ignored unfavorable findings when relying on a June 2021 visit's normal test results. (ECF No. 16 at 17.) She argues he erroneously omitted the fact that Plaintiff reported she "gets [shortness of breath] with minimal exertion" and that she has "significant difficulty getting around due to her size and COPD." (*Id.* (citing Tr. 845).) The ALJ *did* note Plaintiff's "clear profound shortness of breath with any exertion" when discussing her June 2021 exam (Tr. 466, 469) and noted

that she had "significant difficulty getting around due to her size and COPD" (Tr. 467). Not only did the ALJ consistently acknowledge Plaintiff's shortness of breath issues (Tr. 465, 466, 469) and mobility issues due to her size (Tr. 465, 466, 467, 468, 469), he provided limitations for both issues (Tr. 468). The ALJ was not required to cite every instance of abnormality. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). This was not an instance of impermissible cherry-picking, nor was it error for the ALJ to consider Plaintiff's normal lung exam results in discounting the extent of Plaintiff's alleged limitations. (ECF No. 16 at 17); *see* 20 C.F.R. § 404.1529(c)(2) (stating that an ALJ will consider this type of objective medical evidence in evaluating symptom intensity and persistence). Thus, the ALJ did not erroneously omit information.

Plaintiff claims the ALJ cherry-picked evidence by citing a July 2021 visit to allegedly show "she ambulated to the exam room without problem" while omitting the fact that Plaintiff was prescribed a wheelchair and shower chair during that visit, evidence which the ALJ later used to support that Plaintiff needed further limitations. (ECF No. 16 at 17-18.) The ALJ cited the July 2021 visit to note that Plaintiff "had no problem walking to the examination room" that day, tending to show she exaggerated her limitations. (Tr. 469.) He later referenced that Plaintiff was prescribed a wheelchair that day "that she could push and use to rest when needed," warranting an additional off-task limitation. (Tr. 471.) It is not inconsistent to cite the visit to show that Plaintiff is capable of walking and to show she needed rest breaks. Regardless, the ALJ's citation to

the July 2021 visit was not central to his analysis of Dr. Fowler's opinion. The ALJ did not err in omitting reference to Plaintiff's wheelchair prescription when describing her pre-July 2021 limitations.

Plaintiff also claims the ALJ erroneously treated her July 2020 exam as "out of step with other exams." (ECF No. 16 at 19.) The ALJ made no such indication that this exam was "out of step" with others, but rather analyzed the evidence from it and other exams as indicating Plaintiff had mobility and breathing issues, but not to the extent that she would be unable to perform sedentary work. (Tr. 466.) The ALJ did not err in his treatment of the July 2020 exam.

Plaintiff argues briefly in a footnote that the ALJ perhaps should have provided greater limitations for squatting and stooping than Dr. Fowler assessed. (ECF No. 16 at 18 n.7.) A footnote is never an appropriate way to make an argument. *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, No. 20-cv-371, 2022 WL 4273475, at *5 (E.D. Wis. Dec. 15, 2022) (citing *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009)). Regardless, Plaintiff did not produce evidence of greater stooping limitations, and the ALJ limited Plaintiff to sedentary work which, by its "very nature, [is] work performed primarily in a seated position [and] entails no significant stooping." SR 83-10. Thus, the ALJ did not err in not providing further stooping limits.

The ALJ's finding that Dr. Fowler's opinion was partially persuasive was supported by substantial evidence. Thus, the ALJ did not err in affording partial weight to Dr. Fowler's opinion.

### 4.2 Symptom Severity

Plaintiff argues the ALJ made two errors in his subjective symptom assessment. First, she argues he "made the implausible claim of [Plaintiff's] 'reasonable physical function' to undercut her allegations," and that claim was unsupported by substantial evidence. (ECF No. 27 at 5.) Second, she argues the ALJ violated precedent when relying on Plaintiff's daily activities. (*Id.*)

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester*, 920 F.3d at 510; *Summers*, 864 F.3d at 528.

In summarizing Plaintiff's symptoms, the ALJ stated in part:

[T]he claimant's medical records document a history of bilateral knee osteoarthritis, COPD, left shoulder disorder, and obesity. However, the claimant reported improvement in COPD with medication adjustment and without noted reliance on a rescue inhaler. Further, despite limited left shoulder range of motion in July 2020 and significant obesity, *she retained reasonable physical function* with otherwise intact range of motion, intact strength (5/5) in the upper and lower extremities, and slow but normal gait. While the claimant has reported that she is unable to sit for longer than 5 minutes at one time, treating and examining providers have not noted the

claimant to complain of or to exhibit any discomfort with sitting during her examinations ….

(Tr. 467 (emphasis added).) Plaintiff contends the ALJ's statement that she had "reasonable physical function" cannot be squared with the medical evidence. (ECF No. 27 at 5.)

The statement "reasonable physical function" was made in the context of acknowledging Plaintiff's impairments and followed by a description of her normal exam results. Despite describing Plaintiff as retaining reasonable physical function, the ALJ ultimately found she was significantly limited due to her physical impairments. Specifically, he found she was limited to sedentary work—lifting at most 10 pounds, occasionally lifting lighter objects, standing and/or walking two hours per eight-hour workday, and sitting six hours per eight-hour workday. (Tr. 464); SSR 83-10. He further limited Plaintiff to frequent stooping and occasional climbing ramps and stairs, kneeling, crouching, crawling, balancing, pushing, pulling, operating foot controls, overhead reaching with the left upper extremity, never climbing ladders, ropes, or scaffolds, and avoiding exposure to pulmonary irritants. (Tr. 464.) Thus, the ALJ's reference to Plaintiff as retaining reasonable physical function while explaining his RFC assessment was not error.

Plaintiff also argues that the ALJ did not follow Circuit precedent in analyzing Plaintiff's daily activities because the ALJ allegedly "equated Plaintiff's ability to engage in activities" with an ability to perform full-time sedentary work. (ECF No. 27 at 5.)

The ALJ recounted Plaintiff's daily activities and stated:

> While these activities do not equate directly to the ability to perform full time work, they demonstrate that, despite her physical impairments, she remained able to engage in a number of normal day-to-day activities, many of which involve at least a sedentary level of exertion (i.e., longer periods of sitting with only intermittent periods of standing and/or walking).

(Tr. 467-68.)

"While the Seventh Circuit has 'cautioned ALJs not to equate such [daily] activities with the rigorous demands of the workplace[,] ... it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'" *Madosh v. Kijakazi*, No. 22-cv-844, 2023 WL 6521261, at *5 (E.D. Wis. July 31, 2023) (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). Here, the ALJ considered Plaintiff's daily activities to assess the credibility of her testimony that she had difficulties sitting and the effects of her impairments, "not as evidence that [she] could perform full-time competitive work." *See id.* (upholding this type of daily activities analysis). This was not error.

Furthermore, the ALJ's daily activities analysis was not central to his opinion and, even without it, his decision is supported by substantial evidence. *See Kuykendoll v. Saul*, 801 F. App'x 433, 439 (7th Cir. 2020) (finding any error harmless where the ALJ mentioned daily activities as only one of many factors in assessing RFC); *Stenholtz v. Saul*, No. 20-cv-1254, 2021 WL 5206585, at *21 (E.D. Wis. Nov. 8, 2021) (finding any error in not saying

more about plaintiff's "already rather limited activities" was harmless because "the ALJ cited several other factors in determining RFC").

The ALJ did not commit any legal errors in his subjective symptom analysis and it was supported by substantial evidence. Thus, the ALJ's opinion does not warrant remand.

## 5. Conclusion

Plaintiff argues that the Court should direct an award of benefits and apply a new social security rule, SSR 24-2p (changing the past relevant work analysis), to find Plaintiff is entitled to both disability insurance benefits and supplemental security income since her alleged onset date, May 1, 2019. (Tr. 16 at 24-26.) Because the ALJ did not commit reversible error, this argument is moot.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of December, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge